CALLISTER & FRIZELL
ATTORNEYS
8275 S. Eastern Ave., Ste. 200
Las Vegas, Nevada 89123
Telephone (702) 657-6000
Facsimile (702) 657-0065
dfrizell@callisterfrizell.com

R. DUANE FRIZELL, ESQ.
Nevada Bar No. 9807
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| KYLE GOTSHALK; LEONARD GOTSHALK; and CLINTON HALL, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>PETER HELLWIG; ANTHUS LIFE CORP; DOE DEFENDANTS 1 through 10; and ROE ENTITIES 1 through 10,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO: ______________<br><br>**JURY DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Kyle Gotshalk ("Kyle"), Leonard Gotshalk ("Leonard"), and Clinton Hall, LLC ("Clinton Hall") now file this Original Complaint, complaining of Defendants Peter Hellwig ("Hellwig"), Anthus Life Corp ("Anthus"), Doe Defendants 1 through 10, and Roe Entities 1 through 10. For causes of action, Plaintiffs would respectfully show the Court as follows:

## I. JURISDICTION AND VENUE

**1.** Pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. 78j(b), as well as the administrative regulations promulgated thereunder, including without limitation Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, this Court has subject matter jurisdiction (federal question) over this action. Specifically, in this action, Plaintiff states a claim for, among other things, Federal securities fraud.

**2.** In addition, pursuant to 28 U.S.C. §§ 1332(a)(1), 1367(a), this Court has additional subject matter jurisdiction (diversity jurisdiction) over this action. No single Plaintiff is a citizen of the

same state as any single Defendant. With respect to the Plaintiffs, Kyle is a citizen of California; Leonard is a citizen of Oregon; and Clinton Hall is a citizen of Colorado. In terms of the Defendants, Hellwig is a citizen of Florida; and Anthus is a citizen of Nevada. The controversy in this matter exceeds the sum or value of $75,000, exclusive of interest and costs.

**3.** This Court has personal jurisdiction over the Defendants for the following reasons:

(a) Upon information and belief, Defendants engaged in tortious behavior in Nevada; they conduct business in this state; and/or the contracts at issue in this case were executed (and were to be performed) by Defendants in Nevada. In addition, the claims stated in this Original Complaint arise under Defendants' contacts with this state.

(b) Defendants have had such minimum contacts with the State of Nevada that this court's exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice, and the claims stated in this Original Complaint arise under those minimum contacts.

**4.** Pursuant to 28 U.S.C. § 1391(a), Venue is proper in the United States District Court for the District of Nevada for the following reasons:

(a) This judicial district is where all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

(b) Defendants engaged in tortious behavior in Nevada; they conduct business in this state; and/or the contracts at issue in this case were executed (and were to be performed) by Defendants in Nevada.

## II. PARTIES

**5.** Plaintiff ***Kyle Gotshalk ("Kyle")*** is a citizen of California, where he resides.

**6.** Plaintiff ***Leonard Gotshalk ("Leonard")*** is a citizen of Oregon, where he resides

**7.** Plaintiff ***Clinton Hall, LLC ("Clinton Hall")*** is a Colorado business entity. Its principal place of business is located in Colorado.

**8.** Defendant ***Peter Hellwig ("Hellwig")*** is a citizen of Florida, where he resides.

**9.** Defendant ***Anthus Life Corp ("Anthus")*** is a Nevada business entity. Its principal place of business is located in Nevada.

**10.** ***Doe Defendants 1 through 10*** are fictitious names of individuals that are in some manner directly or indirectly liable to Plaintiffs in this matter for claims and causes of action stated herein. Plaintiffs are ignorant of the true names of the individuals so designated by said fictitious names, and when the true names are discovered, Plaintiffs will ask leave to amend the Complaint and proceed herein to substitute the true names of said Defendants. Plaintiffs believe and allege that the Defendants designated as Doe Defendants herein are directly or indirectly responsible and liable to the Plaintiffs for their actions, and that they have caused Plaintiffs to suffer the damages described herein.

**11.** Defendants ***Roe Entities 1 through 10*** are fictitious names of companies and/or other business or other entities that are in some manner directly or indirectly liable to Plaintiffs in this matter for the claims and causes of action stated herein. Plaintiffs are ignorant of the true names of the companies and/or other businesses or other entities so designated by said fictitious names, and when the true names are discovered, Plaintiffs will ask leave to amend this Complaint and proceed herein to substitute the true names of said Defendants. Plaintiffs believe and allege that the Defendants designated as Roe Entities herein are directly or indirectly responsible and liable to the Plaintiffs for their actions, and that they have caused Plaintiffs to suffer the damages described herein.

**12.** In this Complaint, unless otherwise indicated, the term "Plaintiffs" refers collectively to Kyle, Leonard, and Clinton Hall, and the term "Defendants" refers collectively to Hellwig, Anthus, Doe Defendants 1 through 10, and Roe Entities 1 through 10.

## III. NATURE OF THE CASE

**13.** This is a case against corporate con artists. Defendants—the con artists—defrauded Plaintiffs of their shares in and control of a non-party, Nevada corporation, Stakool, Inc. ("Stakool"). Finding relief nowhere else, Plaintiffs now file this lawsuit.

## IV. Respondeat Superior Allegations

**14.** At all material times, Hellwig was acting on his own behalf and on the behalf of Anthus. His actions on the behalf of Anthus were done in the course and scope of his employment, agency, or other representative relationship with that entity. Accordingly, Anthus is vicariously liable and responsible for all of Hellwig's actions, omissions, and conduct.

## V. Alter Ego Allegations

**15.** The conduct of Hellwig and Anthus is not respective. The business identity of Anthus has been initiated in order to perpetrate a fraud. Hellwig has manipulated Anthus in an effort to defraud Plaintiffs. To respect the legal and business separateness of Hellwig and Anthus would perpetrate a fraud under Nevada law, which cannot be condoned. Accordingly, the Defendants must now be treated as one entity required to respond to Plaintiffs' claims and damages.

## VI. Information Allegations

**16.** Allegations made in this Complaint have been based on information and belief, except those allegations that pertain directly to Plaintiffs, which are based on their personal knowledge. The information and belief of Plaintiffs is based upon, among other things, the investigation conducted by Plaintiffs and their attorneys after being retained. Each and every allegation and factual contention contained in this Complaint has evidentiary support or, alternatively, is likely to have evidentiary support after reasonable opportunity for further investigation or discovery by Plaintiffs or their counsel.

## VII. General Factual Allegations

**17.** At the core of this lawsuit is a non-party, Nevada corporation, Stakool, Inc. ("Stakool"). Upon information and belief, its principal place of business is located in Florida. Stakool is publicly traded on the OTC BB Exchange under the symbol (STKO).

**18.** In early 2011, Stakool was owned and managed primarily by Plaintiffs. In the form of an Agreement of Purchase and Sale ("Agreement") executed on or about July 20, 2011 but effective as of about June 27, 2011, Defendants persuaded Plaintiffs to transfer primary ownership and management rights to them.

**19.** Plaintiffs have standing and rights under the Agreement as third-party beneficiaries or otherwise.

**20.** In connection with their inducing Plaintiffs to execute of the Agreement, and during the weeks leading up to that date, Hellwig made various promises and representations to Plaintiffs, including, without limitation, the following:

(a) Defendants would pay $350,000 to Plaintiffs or their assigns, according to the following terms:

i. $100,000 to be paid at closing of the sale (on or about July 22, 2011),

ii. $125,000 within 90 days of closing, and

iii. $125,000 within 180 days of closing;

(b) Within 60 days of closing and based upon a prevailing price clause setting the share price at $0.10 per share, Defendants would issue 1,200,000 shares of Stakool stock to Plaintiffs, and in the event the per share price decreased by the time of the issuance, Defendants would issue to Plaintiffs a number of shares worth $120,000 as of the date of their issuance and delivery to Plaintiffs; and

(c) Other promises and representations.

**21.** Believing and relying upon these promises, representations, and inducements, Plaintiffs, among other things, executed the Agreement and transferred to Defendants 77,588,470 of the 79,388,470 issued and outstanding shares of Stakool.

**22.** In addition, Plaintiffs stepped down as directors and officers of Stakool. Defendants immediately assumed the positions as directors and officers of Stakool.

**23.** Despite the promises, representations, and inducements listed above, as of about October 24, 2011, Defendants had only paid to Plaintiffs a total of $120,000 and had issued no shares of Stakool stock to them.

**24.** Feigning inability to pay, Defendants then induced Plaintiffs to enter into an Amended Agreement of Purchase and Sale (the "First Amendment") on or about November 7, 2011, under which the amounts due and owing to Plaintiffs under the original Agreement would be paid. The First Amendment left intact all of the remaining, material terms of the Agreement.

**25.** Plaintiffs have standing and rights under the First Amendment as third-party beneficiaries or otherwise.

**26.** In connection with their inducing Plaintiffs to execute of the First Amendment, and during the weeks leading up to that date, Hellwig made various promises and representations to Plaintiffs, including, without limitation, the following:

(a) Defendants would pay $105,000 to Plaintiffs or their assigns on or before December 9, 2011;

(b) Defendants would pay an additional $125,000 to Plaintiffs or their assigns on or before February 10, 2012; and

(c) Other promises and representations.

**27.** Such promises, representations, and inducements were made by Defendants (when they were in Nevada and/or Florida) to Plaintiffs (when they were in Nevada, California, and/or Oregon).

**28.** Believing and relying upon these promises, representations, and inducements, Plaintiffs, among other things, executed the First Amendment and forbore from enforcing the payment terms as initially set forth in the original Agreement.

**29.** Despite the additional promises, representations, and inducements listed above, as of about December 19, 2011, Defendants had only paid an additional $10,000 to Plaintiffs and continued to refuse to issue any shares of Stakool stock to them.

**30.** Continuing to feign inability to pay, Defendants further induced Plaintiffs to enter into an Amended Payment Schedule (the "Second Amendment") on or about January 23, 2012, under which the amounts due and owing to Plaintiffs under the original Agreement and the First Amendment would be paid. The Second Amendment left intact all of the remaining, material terms of the original Agreement.

**31.** Plaintiffs have standing and rights under the Second Amendment as third-party beneficiaries or otherwise.

**32.** In connection with their inducing Plaintiffs to execute of the Second Amendment, and during the weeks leading up to that date, Defendants made various promises and representations to Plaintiffs, including, without limitation, the following:

(a) Defendants would pay to Plaintiffs or their assigns the following sums by the following dates:

| DATE | AMOUNT |
|---|---|
| 2/15/2012 | $15,000 |
| 3/15/2012 | $30,000 |
| 4/15/2012 | $30,000 |
| 5/15/2012 | $25,000 |
| 6/15/2012 | $25,000 |
| 7/15/2012 | $25,000 |
| 8/15/2012 | $25,000 |
| 9/15/2012 | $25,000 |
| 10/15/2012 | $25,000 |
| **TOTAL:** | **$225,000** |

and;

(b) Other promises and representations.

**33.** Believing and relying upon these promises, representations, and inducements, Plaintiffs, among other things, executed the Second Amendment and forbore from enforcing the payment terms as initially set forth in the original Agreement and the First Amendment.

**34.** Despite the additional promises, representations, and inducements listed above, as of current, Defendants have only made one (1) additional payment to Plaintiffs: $15,000 on or about February 15, 2012. Defendants have made no further payments to Plaintiffs.

**35.** On or about March 14, 2012, Defendants issued 2,650,000 shares of Stakool stock to Plaintiffs, but the shares were only trading at $0.012 each at the time. Accordingly, contrary to the terms of the Agreement, Defendants only issued Plaintiffs $31,800 in shares, rather than $120,000 in shares. Defendants have continued to refuse to issue any additional shares of Stakool stock to Plaintiffs or to otherwise compensate Plaintiffs for the shortfall in the share values (approximately $88,200).

**36.** Recently, without proper authority and in violation of the Stakool Bylaws, Defendants have issued about 400 billion shares of Stakool stock to themselves and have authorized the

issuance of even more shares. Such shares were authorized and/or issued without the required notice, meeting, and vote of the Stakool shareholders.

**37.** Because of Defendants' conduct described above, Plaintiffs have suffered financial, economic, and other damages. Plaintiffs will continue to suffer such damages in the future.

**38.** Through their attorney, Plaintiffs have made demands directly upon Defendants regarding, among other things, Defendants' refusal to pay the sums due and owing under the original Agreement, First Amendment, and Second Amendment; Defendants' refusal to issue to Plaintiffs the additional Stakool stock owed to them; and Defendants' violation of Bylaws, self-dealing in stock sales, and dilution of Plaintiffs' shares with respect to Defendants' issuance and authorization for the issuance of hundreds of billions of additional shares of stock. To date, Defendants refuse to fix or even address these problems.

**39.** Plaintiffs now bring this lawsuit. Their claims are set forth in Part VIII ("Causes of Action") below.

## VIII. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Securities Fraud—Federal and State**
*(Against All Defendants)*

**40.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, and pursuant to Federal and Nevada law, Plaintiffs state a claim for securities fraud against Defendants, as follows:

**41.** Plaintiffs' Federal law claims for securities fraud are based upon Federal statutes, including without limitation Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. 78j(b), as well as the administrative regulations promulgated thereunder, including without limitation Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.

**42.** Plaintiffs' Nevada law claims for securities fraud are based upon Nevada statutes as well as the administrative rules promulgated thereunder, including without limitation NRS Chapter 90 in general and NRS 90.570 in particular.

**43.** At all material times, Hellwig was acting on his own behalf and on the behalf of Anthus. Upon becoming an officer and director of Stakool, Hellwig was also acting on the behalf of that Stakool. Acting on these behalves, Hellwig sought to induce Plaintiffs to sell to him and then later receive back from him various shares of Stakool stock.

**44.** Under the securities laws (federal and state), Hellwig, Anthus, and Stakool were the controlling persons.

**45.** In this connection, Defendants made all the promises, representations, and inducements set forth in Part VII ("General Factual Allegations") above.

**46.** Defendants' promises, representations, and inducements were false, and they knew that they were false when they made them. Alternatively, Defendants made the promises and representations recklessly, as positive assertions, without knowledge of their truth.

**47.** Defendants solicited and accepted property and other value, including shares in and control of Stakool, from Plaintiffs for the express purpose of, among other things, selling and issuing Stakool stock back to Plaintiffs.

**48.** Based upon Defendants' solicitations and false promises, representations, and inducements, Plaintiffs' provided Defendants with property and other value, including shares in and control of Stakool. In this regard, Plaintiffs relied upon Defendants' representations, to their detriment.

**49.** But for Defendants' false promises and representations, Plaintiffs would not have entered into the original Agreement, First Amendment, or Second Amendment, they would not have transferred shares of Stakool stock to Defendants, and they would not have resigned from their positions as directors and officers of Stakool or allowed Defendants to replace them in these positions.

**50.** Defendants made untrue statements, omitted material facts, and engaged in a course of business which operated as a fraud or deceit with respect to the Plaintiffs' sale and later acquisition of Stakool shares.

**51.** Defendants' conduct as alleged herein constitutes securities fraud.

**52.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages.

**53.** By law, Plaintiffs are entitled to multiple damages.

**54.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**55.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**SECOND CLAIM FOR RELIEF**
**Deceptive Trade Practices/Consumer Fraud**
*(Against All Defendants)*

**56.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, and pursuant to NRS 41.600(e) and 598.0915 through 598.0925, Plaintiffs state a claim for deceptive trade practices/consumer fraud against Defendants, as follows:

**57.** In light of the promises, representations, and inducements made to Plaintiff, as described in more detail in Part VII ("General Factual Allegations") above, Defendants engaged in a pattern of consumer fraud and deceptive trade practices, as follows:

(a) They knowingly made false representations as to the characteristics and benefits of the Stakool shares of stock.

(b) They knowingly made false representations in the transaction involving the sale of the Stakool shares of stock.

(c) They offered an opportunity for investment in a manner which they knew or had reason to know was false or misleading.

(d) They knowingly misrepresented the legal rights, obligations, and/or remedies of Plaintiff.

(e) They failed to disclose material facts in connection with the Stakool stock.

(f) They promised to sell or issue shares of Stakool stock with the intent not to sell or issue the shares as promised.

(g) They engaged in other acts, omissions, and conduct, and they made other false promises and representations.

**58.** Defendants' conduct as alleged herein constitutes deceptive trade practices.

**59.** Based upon Defendants' deceptive trade practices, Plaintiffs' provided Defendants with property and other value, including shares in and control of Stakool. In this regard, Plaintiffs relied upon Defendants' deceptive trade practices, to their detriment.

**60.** But for Defendants' deceptive trade practices, Plaintiffs would not have entered into the original Agreement, First Amendment, or Second Amendment, they would not have transferred shares of Stakool stock to Defendants, and they would not have resigned from their positions as directors and officers of Stakool or allowed Defendants to replace them in these positions.

**61.** Each of the Defendants' separate acts described above has caused Plaintiff economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**62.** By law, Plaintiffs are entitled to multiple damages.

**63.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**64.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**THIRD CLAIM FOR RELIEF**
**Common Law Fraud/Fraudulent Inducement**
*(Against All Defendants)*

**65.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for common law fraud/fraudulent inducement against Defendants, as follows:

**66.** At all material times, Hellwig was acting on his own behalf and on the behalf of Anthus. Upon becoming an officer and director of Stakool, Hellwig was also acting on the behalf of that Stakool. Acting on these behalves, Hellwig sought to induce Plaintiffs to sell to him and then later receive back from him various shares of Stakool stock.

**67.** In this connection, Defendants made all the promises, representations, and inducements set forth in Part VII ("General Factual Allegations") above.

**68.** Defendants' promises, representations, and inducements were false, and they knew that they were false when they made them. Alternatively, Defendants made the promises and representations recklessly, as positive assertions, without knowledge of their truth.

**69.** With respect to the promises of future events, Defendants purported to have special knowledge of facts that would occur in the future. Nevertheless, they knew that the facts would not occur.

**70.** With respect to the promises of future performance, at the time Defendants made the promises, they had no intention of fully performing them.

**71.** Defendants solicited and accepted property and other value, including shares in and control of Stakool, from Plaintiffs for the express purpose of, among other things, selling and issuing Stakool stock back to Plaintiffs.

**72.** Defendants made untrue statements, omitted material facts, and engaged in a course of business which operated as a fraud or deceit with respect to the Plaintiffs' sale and later acquisition of Stakool shares.

**73.** Based upon Defendants' solicitations and false promises, representations, and inducements, Plaintiffs' provided Defendants with property and other value, including shares in and control of Stakool. In this regard, Plaintiffs relied upon Defendants' representations, to their detriment.

**74.** Defendants made their false promises, representations, and inducements to Plaintiffs in order to induce them to part with their shares in and control of Stakool.

**75.** But for Defendants' false promises and representations, Plaintiffs would not have entered into the original Agreement, First Amendment, or Second Amendment, they would not have transferred shares of Stakool stock to Defendants, and they would not have resigned from their positions as directors and officers of Stakool or allowed Defendants to replace them in these positions.

**76.** As a result of Defendants' false promises and representations, Plaintiffs have suffered damages

**77.** Defendants' conduct as alleged herein constitutes common law fraud/fraudulent inducement.

**78.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages.

**79.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**80.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract(s)**
*(Against All Defendants)*

**81.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for breach of contract(s) against Defendants, as follows:

**82.** At all material times, Hellwig was acting on his own behalf and on the behalf of Anthus. Upon becoming an officer and director of Stakool, Hellwig was also acting on the behalf of that Stakool. Acting on these behalves, Hellwig sought to induce Plaintiffs to sell to him and then later receive back from him various shares of Stakool stock.

**83.** The original Agreement, the First Amendment, and the Second Amendment each constitutes a contract between Plaintiffs and Defendants.

**84.** Plaintiffs have standing and rights under the Agreement, the First Amendment, and the Second Amendment as third-party beneficiaries or otherwise.

**85.** All conditions precedent for Defendants' performance of the contract(s) were fully satisfied.

**86.** Defendants have failed to perform their obligations under the contract(s). Specifically, Defendants have breached their contract(s) with Plaintiff by, among other things, failing to pay

the full amount of the cash due and owing under the contract(s), failing to issue to Plaintiffs the agreed upon value in Stakool shares, and improperly diluting the value of the Stakool shares that have already been issued (and that still need to be issued) to Plaintiffs.

**87.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**88.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**FIFTH CLAIM FOR RELIEF**
**Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing**
*(Against All Defendants)*

**89.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for contractual breach of the implied covenant of good faith and fair dealing against Defendants, as follows:

**90.** Under Nevada law, there exists an implied covenant of good faith and fair dealing which became part of all of Defendants' obligations under their contract(s) with Plaintiffs. There is no question that Defendants are bound by such an implied covenant in this case.

**91.** At all material times, Hellwig was acting on his own behalf and on the behalf of Anthus. Upon becoming an officer and director of Stakool, Hellwig was also acting on the behalf of that Stakool. Acting on these behalves, Hellwig sought to induce Plaintiffs to sell to him and then later receive back from him various shares of Stakool stock.

**92.** The original Agreement, the First Amendment, and the Second Amendment each constitutes a contract between Plaintiffs and Defendants.

**93.** Plaintiffs have standing and rights under the Agreement, the First Amendment, and the Second Amendment as third-party beneficiaries or otherwise.

**94.** All conditions precedent for Defendants' performance of the contract(s) were fully satisfied.

**95.** Defendants have failed to perform their contractually implied covenant of good faith and fair dealing under the contract(s). Specifically, Defendants have breached the implied covenant

by, among other things, failing to pay the full amount of the cash due and owing under the contract(s), failing to issue to Plaintiffs the agreed upon value in Stakool shares, and improperly diluting the value of the Stakool shares that have already been issued (and that still need to be issued) to Plaintiffs.

**96.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**97.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**SIXTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
*(Against All Defendants)*

**98.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for breach of fiduciary duty against Defendants, as follows:

**99.** A special relationship of trust and reliance arose between the Plaintiffs on the one hand and Defendants on the other hand when Defendants became shareholders, directors, and officers of Stakool and otherwise assumed full control of the company. The relationship among the parties imposed upon Defendants fiduciary duties, which they owed to Plaintiffs as shareholders of Stakool. The fiduciary duties include those of good faith, loyalty, candor, and competence.

**100.** Defendants have breached these fiduciary duties owed to Plaintiffs by, among other things, failing to pay the full amount of the cash due and owing for Plaintiffs' transfer of Stakool shares to them, failing to issue to Plaintiffs the agreed upon value in Stakool shares, and improperly diluting the value of the Stakool shares that have already been issued (and that still need to be issued) to Plaintiffs.

**101.** Plaintiffs have repeatedly sought recourse from Defendants, but they have categorically refused Plaintiffs' demands to be made whole.

**102.** Plaintiffs have suffered damages which were proximately caused by Defendants' bad faith and unreasonable conduct.

**103.** In breaching their fiduciary duties, Defendants have acted willfully, intentionally, and maliciously to oppress Plaintiffs and frustrate their rights and expectations with respect to the their equity and other interests (and the value of those interests) in Stakool.

**104.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**105.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**106.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**SEVENTH CLAIM FOR RELIEF**
**Tortious Breach of the Implied Duty of Good Faith and Fair Dealing**
*(Against All Defendants)*

**107.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for tortious breach of the implied duty of good faith and fair dealing against Defendants, as follows:

**108.** The unreasonable actions of Defendants constitute bad faith and are actionable as a tort under Nevada law. A special relationship of trust and reliance arose between the Plaintiffs on the one hand and Defendants on the other hand when Defendants became shareholders, directors, and officers of Stakool and otherwise assumed full control of the company. That relationship imposed upon Defendants the tort-based, implied duty of good faith and fair dealing.

**109.** Defendants have breached this implied duty owed to Plaintiffs by, among other things, failing to pay the full amount of the cash due and owing for Plaintiffs' transfer of Stakool shares to them, failing to issue to Plaintiffs the agreed upon value in Stakool shares, and improperly diluting the value of the Stakool shares that have already been issued (and that still need to be issued) to Plaintiffs.

**110.** Plaintiffs have repeatedly sought recourse from Defendants, but they have categorically refused Plaintiffs' demands to be made whole.

**111.** Plaintiffs have suffered damages which were proximately caused by Defendants' bad faith and unreasonable conduct.

**112.** In breaching their tort-based duty, Defendants have acted willfully, intentionally, and maliciously to oppress Plaintiffs and frustrate their rights and expectations with respect to the their equity and other interests (and the value of those interests) in Stakool.

**113.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**114.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**115.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
*(Against All Defendants)*

**116.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for negligent misrepresentation against Defendants, as follows:

**117.** In their dealings with Plaintiffs, Defendants owed Plaintiff the duty of reasonable care.

**118.** Defendants breached this duty because they failed to exercise reasonable care with respect to the purchase, transfer, issuance, and acquisition of Stakool shares and control. Specifically, at all times relevant to this lawsuit, Defendants made material negligent misrepresentations set forth in Part VII ("General Factual Allegations").

**119.** Plaintiff reasonably relied upon Defendants' misrepresentations.

**120.** These Defendants' negligent misrepresentations proximately caused damages to the Plaintiffs.

**121.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

122. Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

123. Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**NINTH CLAIM FOR RELIEF**
**Civil Conspiracy/Concert of Action**
*(Against All Defendants)*

124. Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for civil conspiracy/concert of action against Defendants as follows:

125. Defendants and each of them knowingly acted in concert and in a conspiratorial fashion with each other in order to deprive Plaintiffs of property and other value, including the control of Stakool.

126. Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

127. Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

128. Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**TENTH CLAIM FOR RELIEF**
**Unjust Enrichment/Quantum Meruit**
*(Against All Defendants)*

129. Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for unjust enrichment/quantum meruit against Defendants as follows:

130. Defendants accepted property and other value from Plaintiffs, including shares in and control of Stakool, without compensating Plaintiffs for the full and fair value of what they received.

**131.** In this regard, Defendants have been unjustly enriched.

**132.** Principles of equity and fairness dictate that Defendants pay to Plaintiff the full amount of their unjust enrichment.

**133.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**134.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**135.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**ELEVENTH CLAIM FOR RELIEF**
**Declaratory Judgment**
*(Against All Defendants)*

**136.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim against Defendants for declaratory judgment and seek a judgment from the Court declaring their interest against Defendants.

**137.** In this connection, Plaintiffs request the Court to declare as follows:

(a) that Defendants are in default of the original Agreement, the First Amendment, and the Second Amendment because of, among other things, their failure to pay the full amount of the cash due and owing under the contract(s), their failure to issue to Plaintiffs the agreed upon value in Stakool shares, and their improper diluting the value of the Stakool shares that have already been issued (and that still need to be issued) to Plaintiffs;

(b) that Plaintiffs have standing and rights under the Agreement, the First Amendment, and the Second Amendment as third-party beneficiaries or otherwise;

(c) that Defendants are required to have the proper number and value of Stakool shares issued to Plaintiffs;

(d) that, without proper authority and in violation of the Stakool Bylaws, Defendants have issued about 400 billion shares of Stakool stock to themselves and have authorized the issuance of even more shares;

(e) that Defendants are required to rescind and cancel the issuance of the 400 billion or more of Stakool shares to themselves and/or others; and

(f) that Defendants may not issue any Stakool shares unless done with proper authority and according to the terms of the Stakool Bylaws.

**138.** Plaintiffs' claim for declaratory judgment represents an actual and live controversy between Plaintiffs and Defendants. Hence, it is ripe and justiciable.

**139.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**140.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**TWELFTH CLAIM FOR RELIEF**
**Conversion/Trespass to Chattels**
*(Against All Defendants)*

**141.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for conversion/trespass to chattels against the Defendants, as follows:

**142.** Defendants converted or trespassed upon Plaintiffs' property (i.e., their Stakool shares) by, among other things, taking title, possession, custody, and control of the shares in an unauthorized manner, refusing to compensate Plaintiffs for the shares, denying Plaintiffs the benefits of ownership of the shares, and taking control of Stakool.

**143.** Plaintiffs never consented to the conversion or trespass.

**144.** As a result of Defendants' conduct, the Plaintiffs have suffered damages, including without limitation financial losses, losses of property and other value (including the Stakool shares and control of the company), and losses of investment and other business opportunities.

**145.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**146.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**147.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

**THIRTEENTH CLAIM FOR RELIEF**
**Constructive Trust**
*(Against All Defendants)*

**148.** Incorporating all of the foregoing and ensuing paragraphs as if fully set forth herein, Plaintiffs state a claim for constructive trust against the Defendants as follows:

**149.** By virtue of the relationship between the Plaintiffs and Defendants, a confidential and fiduciary relationship exists between them. In addition, because of the conduct of Defendants, any funds and property in their possession that is traceable to Plaintiffs should be held in trust by Defendants for the benefit of the Plaintiffs, including without limitation the Stakool shares transferred to Defendants from Plaintiffs, the Stakool shares issued by Defendants to themselves, and the Stakool shares yet to be issued to Plaintiffs.

**150.** By virtue of the wrongful acts described herein, Defendants have acquired property which is rightfully owned by the Plaintiffs.

**151.** It would be inequitable for the Defendants to retain this property against the interests of the Plaintiffs.

**152.** The existence of a constructive trust is essential to the effectuation of justice and to protect the interests of the Plaintiffs.

**153.** Accordingly, a constructive trust should be imposed against the Defendants regarding the funds and property identified above to (a) prevent the Defendants from further utilizing, dissipating, or diluting the funds and property; and (b) to compel the Defendants to deliver funds, Stakool shares, and other property to Plaintiffs.

**154.** An accounting should be performed regarding all of the foregoing, including without limitation the amount of money and property received and retained by the Defendants, to determine the rights and interests of the Plaintiffs.

**155.** Each of the Defendants' separate acts described above has caused Plaintiffs economic and non-economic damages in excess of the jurisdictional requirement of $75,000.

**156.** Defendants' actions were done with the intent to defraud Plaintiffs, were done with malice (having an intent to injure Plaintiffs), and/or were done with conscious or reckless disregard for the rights and well-being of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

**157.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action, and Plaintiffs are entitled to recover their reasonable attorney fees and court costs.

## IX. DAMAGES

**158.** Because of Defendants' separate acts described above, Plaintiffs have suffered damages and are entitled to a recovery as follows:

### Actual, Consequential, and Incidental Damages

**159.** Plaintiffs are entitled to a recovery for their actual, consequential, and incidental damages in an amount in excess of the jurisdictional requirement of $75,000.

### Punitive, Exemplary, and Multiple Damages

**160.** Plaintiffs are entitled to a recovery for punitive and exemplary damages. In this connection, Plaintiffs would show the Court as follows: With respect to each of Plaintiffs' non-contractual claims above, Defendants acted with malice (having a specific intent to cause substantial injury or harm to Plaintiffs); they acted for the purpose of defrauding Plaintiffs; and/or they acted with gross negligence and/or reckless disregard for the rights of Plaintiffs. For all of these reasons, Plaintiffs are entitled to punitive and exemplary damages against Defendants. In addition, Plaintiffs are entitled to multiple damages.

### Attorney Fees and Court Costs

**161.** Plaintiffs have found it necessary to secure the services of an attorney in order to prosecute this action. Therefore, Plaintiffs are entitled to an award for reasonable attorney fees and court costs.

**Pre-Judgment and Post-Judgment Interest**

**162.** Plaintiffs are entitled to pre-judgment and post-judgment interest.

## X. JURY DEMAND

**163.** Plaintiffs demand trial by jury.

## XI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Kyle Gotshalk ("Kyle"), Leonard Gotshalk ("Leonard"), and Clinton Hall, LLC ("Clinton Hall") respectfully request the Court as follows:

A. to award Plaintiffs actual damages, consequential damages, and incidental damages in excess of the Court's jurisdictional requirement of $75,000;

B. to render declaratory judgment in favor of Plaintiffs according to the terms set forth in Part VIII, Eleventh Claim for Relief ("Declaratory Judgment") above;

C. to award Plaintiffs punitive and exemplary damages;

D. to award Plaintiffs multiple damages as allowed by law;

E. to award Plaintiffs reasonable attorney fees and court costs;

F. to award Plaintiffs pre-judgment and post-judgment interest; and

G. to award Plaintiffs all such other and further relief to which they may be entitled at law or in equity.

DATED this 15th day of March 2013.

Respectfully submitted,

**CALLISTER & FRIZELL**
8275 S. Eastern Ave., Suite 200
Las Vegas, Nevada 89123
Office (702) 657-6000
Fax (702) 657-0065
dfrizell@callisterfrizell.com

By: ______________________
**R. DUANE FRIZELL**
Nevada Bar No. 9807
*Attorneys for Plaintiffs*