1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

4

5

6

7

8

9

| | |
|---|---|
| Kyle Gotshalk, et al., | 2:13-cv-00448-JAD-NJK |
| Plaintiffs | **Order Granting in Part Motion for Default Judgment** |
| v. | [ECF No. 108] |
| Peter Hellwig, et al., | |
| Defendants | |

10

11

12

13

14

15

16

17

18

19

20

21

        Kyle and Leonard Gotshalk, Clinton Hall, LLC, Richard Maher, and Patrick O'Loughlin
sued Peter Hellwig and his companies, Anthus Life Corp. and Stakool Inc., alleging that Hellwig
and Anthus defrauded plaintiffs out of their shares and control of defendant-company Stakool.[1]
Defaults have been entered against all defendants,[2] and plaintiffs renew their motion for default
judgment against them.[3]  I find that plaintiffs have shown that they are entitled to default
judgment on some of their claims and a damage award of $431,800, but they have not shown
their entitlement to injunctive relief or to the additional damages they seek.  I therefore grant in
part plaintiffs' motion and give them until April 9, 2017, to prove their request for any additional
monetary damages and injunctive relief.[4]

22

[1] ECF No. 4.

23

24

[2] ECF Nos. 26, 94.  All claims against the Delphina Group and Nick Plessas were voluntarily
dismissed on July 31, 2013.  ECF No. 18.

25

26

27

28

[3] ECF No. 3.  This is plaintiffs' fourth default-judgment attempt.  I denied without prejudice
plaintiffs' last motion for default judgment because they failed to address the *Eitel* factors.  I
denied without prejudice plaintiffs' first motion for default judgment because it contained
insufficient information, ECF Nos. 15, 47, and I denied without prejudice plaintiffs' second
default-judgment motion because Stakool belatedly appeared in this case and successfully moved
to set aside the Clerk's default.  ECF Nos. 48, 58.

[4] I find this motion suitable for disposition without oral argument.  L.R. 78-1.

**Background**

**A.   Anthus purchases primary ownership and management rights of Stakool from plaintiffs.**

Stakool was a publicly traded company owned and managed primarily by plaintiffs.[5]  In the summer of 2011, plaintiffs sold primary ownership and management rights to Hellwig's alter-ego company, Anthus.[6]  Under the purchase agreement, plaintiffs agreed to transfer the overwhelming majority of all issued and outstanding Stakool common stock[7] to Anthus in exchange for $350,000, and Anthus promised to issue 1.2 million shares[8] of Stakool common stock back to Clinton Hall, Kyle Gotshalk, and a third party[9] within 60 days of closing.[10]  To protect the value of the common stock, the parties also agreed to limit the total issued and outstanding shares of Stakool common stock.[11]  The agreement required the current directors of Stakool—including then-President and Director K. Gotshalk—to step down, and Hellwig and his associates immediately assumed management positions.[12]

Kyle Gotshalk and Clinton Hall eventually received the cash owed under the purchase agreement, but not the promised shares, and Maher was never paid the $25,000 owed to him under the purchase agreement.  Kyle and Hellwig later signed first and second amendments to the purchase agreement to revise the payment schedule.  Under these amendments, Clinton Hall and

---

[5]  ECF No. 4 at ¶ 26.

[6]  *Id.* at ¶ 27.

[7]  Clinton Hall agreed to transfer 2,250,000 shares; K. Gotshalk agreed to transfer 4,209,900 shares; and Richard Maher agreed to transfer 2,500,000 shares.  ECF No. 108-2 at 19.

[8] Or $120,000 worth of shares, whichever value is greater.

[9] Former Stakool board member Cherish Adams, who is not a party to this lawsuit.

[10] ECF No. 4 at ¶ 31; ECF No. 108-2 at 4.

[11] ECF No. 108 at 4.

[12] ECF No. 4 at ¶¶ 31–34.

1  Gotshalk were to receive additional shares and Maher was to be paid $5,000 per month until the

2  full $25,000 was paid.[13]  The second amendment also contained a protection against dilution:

3  "No dilution of Clinton Hall, Kyle Gotshalk's, or Cherish Adam's [shares] shall take place

4  during the pendency of this Agreement."[14]  Stakool ultimately issued only a fraction of the

5  promised shares and never paid Maher.[15]

6

7  **B.   Plessas and Delphina agree to purchase Stakool common stock from Clinton Hall and Kyle Gotshalk, Maher, and O'Loughlin.**

8       In the meantime, Nick Plessas and the Delphina Group—both of whom were acting in

9  concert with Hellwig and Anthus—contracted with Clinton Hall and Kyle Gotshalk to buy 1.1

10  million shares of Stakool common stock for $110,000.[16]  Clinton Hall and Kyle released their

11  shares on the open market, where Delphina said it would acquire the stock.[17]  Delphina refused to

12  acquire the shares, and it has never paid Clinton Hall and Kyle for releasing their shares.[18]

13       Plessas and Delphina also persuaded plaintiffs Richard Maher and Patrick O'Loughlin to

14  part with 2.5 million and 450,000 shares, respectively, in the same fashion.[19]  Delphina never

15  acquired the released shares or compensated Maher and O'Loughlin for releasing them.[20]

16

17  _____

18  [13] ECF No. 108-4, 108-5.

19  [14] ECF No. 108-4 at 3.

20  [15] ECF No. 108 at 8.  The amended agreements required Stakool to issue $228,600 in shares
21  (with a floor value of $.10 per share) to Clinton Hall, of which Stakool issued only $31,800 in
22  shares.  Gotshalk was to receive $182,000 shares, also with a floor value of $.10 per share, and he received none.

23  [16] *Id.* at ¶ 59.

24  [17] *Id.* at ¶ 63.

25  [18] *Id.* at ¶ 64.

26  [19] *Id.* at ¶¶ 66, 73.

27  [20] *Id.* at ¶¶ 72–72, 78–79

28

3

1    Finally, Stakool entered into a separate consulting agreement with Kyle in exchange for 1.3

2    million shares of Stakool common stock.[21]  Gotshalk rendered all services due under the

3    agreement, but Stakool refused to issue the stock or otherwise compensate him.[22]

4

5    **C.    Stakool fails to issue plaintiffs the promised shares and issues shares to Hellwig and
         others without shareholder authorization, and plaintiffs call a shareholder meeting.**

6          Without proper authority or notice and in violation of the purchase agreement and

7    Stakool's bylaws, agreements, and governing documents, defendants increased the authorized

8    shares of Stakool common stock to four billion—of which two billion were issued to

9    Hellwig—and to issue additional series and classes of preferred shares, which diluted plaintiffs'

10   ownership, equity, and voting rights.[23]  Despite these issuances, Clinton Hall retained and

11   continues to hold 9.9 million shares of Class A Prefferred Stock, which constitute the majority of

12   voting rights in Stakool.[24]

13         In March 2013, plaintiffs exercised their rights under Stakool's bylaws as majority

14   preferred shareholders and scheduled and noticed a special meeting of the shareholders to vote on

15   the replacement of the then-existing board members—which consisted of Hellwig and his

16   associates—and to revoke all of the improperly issued common and preferred shares, including

17   those issued to Hellwig.[25]  A majority of Stakool's voting-eligible shareholders voted at the

18   meeting to remove and replace the existing board members and to revoke all improperly issued

19   shares.[26]  Nevertheless, Hellwig issued an additional 1.1 billion shares of Stakool common stock

20   to Joseph C. Canouse a few days later, and he and the other officers—who had already been

21

22   [21] *Id.* at ¶ 43.

23   [22] *Id.* at ¶ 44.

24   [23] *Id.* at ¶¶ 39–40; ECF No. 108-8.

25   [24] *Id.* at ¶¶ 45–46; ECF No. 108-1 (stock certificate).

26   [25] *Id.* at ¶¶ 47–48.

27   [26] *Id.* at ¶ 49.

28

removed at the March 12 meeting—purported to appoint Canouse as Stakool's President, Chief Executive Officer, and Director before "resigning" from their posts.[27]  Canouse—whom plaintiffs characterize as a "rogue director"—then proceeded to issue a press release, which the newly formed board was forced to publicly disclaim.[28]  Two weeks later, plaintiffs filed this lawsuit to regain control of Stakool and recoup their losses.  Seven months after this lawsuit was filed, Stakool changed its name to Fresh Promise Foods, Inc.

Plaintiffs Kyle and Leonard Gotshalk, Clinton Hall, LLC, Richard Maher, and Patrick O'Loughlin sued defendants Peter Hellwig and Nick Plessas and their alter-ego companies, Anthus Life Corp and Delphina Group, along with Stakool.  Plaintiffs allege that Anthus, Delphina, and Stakool are vicariously liable for Hellwig and Plessas's acts and omissions and that Hellwig, Anthus, Delphina, and Plessas must all be "treated as one entity" for purposes of this lawsuit.[29]  Plaintiffs assert 22 claims for relief and seek declaratory, injunctive, and monetary relief.[30]  All claims against Plessas and Delphina were voluntarily dismissed not long after this action commenced,[31] and default was entered against Anthus and Hellwig after they failed to appear in this action.[32]  About 33 months later, I entered default against Stakool and dismissed its counterclaims with prejudice for its repeated refusal to comply with this court's orders.[33]

Plaintiffs now move for default judgment.  They seek declaratory and injunctive relief that all actions taken in violation of the purchase agreement and amendments and Stakool's

---

[27] *Id.* at ¶¶ 49–52.

[28] *Id.* at ¶¶ 56–57.

[29] *Id.* at ¶¶ 22–24.

[30] Some of plaintiffs' claims are more properly viewed as requests for relief.  For example, plaintiffs' thirteenth "claim" is titled  "injunctive relief."  Some of plaintiffs' claims are also alleged only against dismissed defendants Delphina and Plessas.

[31] ECF No. 18.

[32] ECF No. 26.

[33] ECF No. 94.

governing documents are void, and they collectively seek $832,500 in monetary damages and $67,846.89 in attorney's fees and costs.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[34] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[35] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[36] Whether to grant a motion for default judgment lies within my discretion,[37] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[38]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[39]

---

[34] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[35] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[36] *See* FED. R. CIV. P. 55(b)(2).

[37] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[38] *Eitel*, 782 F.2d at 1471–72.

[39] *Id.* at 1472.

1  **A.      Analyzing the *Eitel* factors**

2          **1.      *Possibility of prejudice to plaintiffs***

3          The first *Eitel* factor weighs in favor of granting default judgment against the defendants.

4  Plaintiffs pursued their claims to recover the damages that they sustained as a result of the

5  defendants' acts and omissions.  The defendants failed to participate in this case despite

6  plaintiffs' attempts to include them: Hellwig and Anthus never appeared, and Stakool repeatedly

7  violated this court's orders, which resulted in case-dispositive sanctions and the entry of default.

8  Without a judgment against the defendants, plaintiffs have no other recourse to recover for the

9  damages that they have sustained, and defendants may continue to dilute the value of plaintiffs'

10  shares, further damaging them.

11          **2.      *Substantive merits and sufficiency of the claims***

12          The second and third *Eitel* factors require plaintiffs to demonstrate that they have stated a

13  claim on which they may recover.[40]  Plaintiffs conclusorily argue that their amended complaint

14  contains 22 well-pleaded claims for relief against defendants.[41]  Because this is plaintiffs' fourth

15  default-judgment effort, I nonetheless analyze some of plaintiffs' claims to determine whether

16  they have stated any on which they may recover.

17                  ***a.  Breach of contract***

18          To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1)

19  the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the

20  breach.[42]  Plaintiffs have shown the existence of a valid contract via the purchase agreement,

21  amended payment agreements, and Gotshalk's consulting agreement.  They have also offered

22  evidence to show that Anthus breached its obligations under the agreement by failing to issue

23  Clinton Hall and K. Gotshalk the promised shares and by failing to pay Maher the $25,000 due to

24

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [40] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

27  [41] ECF No. 108 at 18.

28  [42] *Laguerre v. Nevada System of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011).

him under the agreement.[43]

Kyle Gotshalk has also stated a claim for breach of contract against Stakool for breach of the consulting agreement.  He alleges that he agreed to render six months of consulting services in exchange for 1.3 million shares of Stakool common stock,[44] that he rendered all services due under the agreement, and that Stakool refused to issue the stock or otherwise compensate him.[45]

Additionally, I am persuaded that Hellwig and the two companies he now controls—Anthus and Stakool/Fresh Promise—should be treated as alter egos because the facts in the amended complaint sufficiently establish that Hellwig controls both of these companies, they share a unity of interest, and that, because Hellwig has used them to commit fraud against the plaintiffs, adherence to the corporate fiction under these circumstances would sanction fraud or promote manifest injustice.[46]  I therefore find that Hellwig, Anthus, and Stakool are jointly and severally liable for Anthus and Stakool's contractual breaches.

However, I find that plaintiffs' claims for breach of contract based on the stock-transfer agreements with Nick Plessas and the Delphina Group fail as plead against Hellwig, Anthus, and Stakool.  Plaintiffs allege that they agreed to part with these additional shares based on representations from Plessas and Delphina, who were voluntarily dismissed from this case,[47] and their in-concert or conspiracy allegations are conclusory.[48]  Thus, they do not plausibly show that defendants conspired with Plessas and the Delphina group to defraud plaintiffs out of these additional shares.  Plaintiffs' conclusory alter-ego allegations also do not persuade me that defendants should be liable for Plessas and Delphina's conduct.

---

[43] ECF No. 108-2 (purchase agreement); ECF Nos. 108-18, 108-19.

[44] *Id.* at ¶ 43.

[45] *Id.* at ¶ 44.

[46] NEV. REV. STAT. § 78.747.

[47] *See, e.g.,* ECF No. 108-20 at 2.

[48] *Id.*

1

### b. Common-law fraud and negligent misrepresentation

2    The amended complaint sufficiently sets forth plaintiffs' fraud-based claims against

3    defendants under Rule 8 and 9(b).  In order to state a claim for fraud under Nevada law, the

4    plaintiff must allege: "(1) a false representation made by the defendant; (2) defendant's

5    knowledge or belief that its representation was false or that defendant has an insufficient basis of

6    information for making the representation; (3) defendant intended to induce plaintiff to act or

7    refrain from action upon the misrepresentation; and (4) damage to the plaintiff as a result of

8    relying on the misrepresentation."[49]  Plaintiffs allege that defendants knowingly made false

9    representations that they would issue the promised shares back to plaintiffs and honor the terms

10   of the purchase agreement and amendments to induce plaintiffs to relinquish ownership and

11   control of Stakool.[50]  In reliance on these promises, Gotshalk executed the purchase agreement

12   and Gotshalk, Clinton Hall, and Maher relinquished the promised shares and were damaged

13   because they did not receive the promised payments or shares, and the value of the shares that

14   they did receive was diluted by defendants' conduct.

15

### c. Deceptive trade practices/consumer fraud

16   Victims of a deceptive trade practice may bring a consumer-fraud action.[51]  To prevail,

17   plaintiffs must show that an act of consumer fraud by the defendants caused damage to the

18   plaintiffs.[52]  Consumer fraud is "a deceptive trade practice as defined in NRS 598.0915 to

19   598.0925, inclusive."[53]  Plaintiffs do not specify which provision defendants violated.  They

20   allege that defendants knowingly "made false representations in the transaction involving the sale

21

22

23   [49] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

24   [50] ECF No. 4 at ¶¶ 105–119.

25

26   [51] *See* NEV. REV. STAT. § 41.600(1) and (2)(3).

27   [52] *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009).

28   [53] NEV. REV. STAT. § 41.600(2)(e).

of the Stakool shares of stock," among other things.[54]   In other places in the complaint, plaintiffs allege that defendants falsely represented that they would honor the terms of the purchase agreement and amendments to swindle plaintiffs out of their ownership and control of Stakool, and that they were damaged because they never received the shares or money due under these agreements.[55]   Section 598.0915(15) of the Nevada Revised Statutes makes it a deceptive trade practice to knowingly make a false representation in a transaction.   Plaintiffs state a claim for deceptive trade practice/consumer fraud.

### 3.   Amount at stake

The third *Eitel* factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct."[56]   Plaintiffs seek to recover a total of $590,000[57] plus interest, attorney's fees, and costs.   These damages are comprised of the value of the unissued shares, the dilution of the value of the shares that were issued, and the uncompensated transfers of stock to Delphina and Plessas.   This amount is plainly significant, but I find that it is not unreasonable when balanced against defendants' conduct, which includes fraud and intentional breaches of several agreements.   So long as defendants can prove their entitlement to these damages, the amount is reasonable in light of the circumstances of this case.

### 4.   Possibility of dispute

Under the next *Eitel* factor, I consider the possibility that material facts are disputed. Plaintiffs have adequately alleged breach-of-contract and fraud claims against defendants.   When Hellwig and Anthus failed to appear and Stakool incurred case-dispositive sanctions, all of the well-pled material facts alleged in plaintiffs' amended complaint were deemed admitted.

---

[54] ECF No. 4 at ¶ 97.

[55] *Id.* at ¶¶ 105–119.

[56] *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citation omitted).

[57]   Less the $242,500 sought for the Delphina-Plessas purchase agreements, which plaintiffs have not shown these defaulted defendants are liable for.

Plaintiffs have also provided the purchase agreement and amendments and several other documents to support their claims. Because the facts in plaintiffs' amended complaint are presumed true and supported by the record evidence, and defendants have failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment against defendants.

### 5.   *Possibility of excusable neglect*

The seventh *Eitel* factor requires me to consider whether defendants' default may have resulted from excusable neglect. Despite being served with a demand letter and process, Hellwig and Anthus never appeared in this lawsuit. Stakool eventually appeared in this action,[58] and it successfully opposed plaintiffs' first motion for default judgment and moved to set aside the Clerk's first entry of default.[59] The magistrate judge then held a settlement conference and the parties represented that a settlement had been reached. But after the court granted several continuances to allow the parties a chance to finalize the agreement, Stakool's attorney notified the court that he had lost contact with his client, and he successfully moved to withdraw.[60]

When the magistrate judge granted counsel's motion to withdraw, she ordered Stakool to retain new counsel by March 25, 2016.[61] After that deadline expired and counsel had not appeared on Stakool's behalf, the magistrate judge ordered Stakool to show cause why default judgment should not be entered against it for its failure to comply.[62] The magistrate judge expressly warned Stakool that its failure to comply would result in case-dispositive sanctions.[63] After Stakool failed to show cause or otherwise respond to the magistrate judge's order, she

---

[58] ECF No. 49.

[59] ECF No. 58.

[60] ECF Nos. 86, 90 (minutes).

[61] ECF No. 90.

[62] ECF No. 91.

[63] *Id.*

issued a report recommending that I dismiss all of Stakool's counterclaims with prejudice and enter default against it.[64]   Stakool filed no objections, and I adopted the magistrate judge's recommendation, dismissed Stakool's counterclaims with prejudice, and directed the Clerk to enter default against it.[65]   Stakool has never again appeared in this action, and the court's mail to the corporation has been returned as undeliverable.[66]   There is no evidence that defendants' defaults are the product of excusable neglect.

### 6.   *Policy for deciding cases on the merits*

Hellwig and Anthus's failure to appear in this action and Stakool's repeated violations of this court's orders also renders a decision on the merits in this case "impractical, if not impossible."[67]   Entry of default judgment is therefore appropriate.

## B.   Character and amount of plaintiffs' recovery

### 1.   *Monetary damages*

Plaintiffs do not specify which damages they seek to recover for which claims.  As to plaintiffs' breach-of-contracts claims, "[i]t is well established that in contracts cases, compensatory damages 'are awarded to make the aggrieved party whole and . . . should place the plaintiff in the position he would have been in had the contract not been breached.'"[68]

As to plaintiffs' fraud-based claims, "[a] party to a contract may seek rescission of that contract based on fraud in the inducement."[69]   "'Rescission is an equitable remedy [that] totally

---

[64] ECF No. 92.

[65] ECF No. 94.

[66] ECF Nos. 97, 101, 107.

[67] *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)).

[68] *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (quoting *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 211 (Nev. 1991)).

[69] *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007) (citation omitted).

12

abrogates a contract and . . . seeks to place the parties in the position they occupied prior to executing the contract.'"[70]  Although plaintiffs assert a claim for fraud in the inducement,[71] they do not seek to rescind the purchase agreement.  Out-of-pocket losses are a measure of damages often used in fraud cases.[72]  In the context of misrepresentation, the out-of-pocket measure "is comprised of 'the difference between what [the defrauded party] gave and what he actually received . . . .'"[73]  The benefit-of-the bargain is another method for measuring damages in fraudulent-misrepresentation cases.  Under that measure, plaintiffs are awarded "the value of what [it] would have if the representations were true, less what [it] had actually received."[74]

Under the circumstances of this case, and because plaintiffs do not seek rescission of the purchase agreement, their fraud and contractual damages turn out to be the same.  The appropriate measure of damages is the shares or share value due to plaintiffs under the purchase agreements and amendments, less whatever value they actually received.

### a. Clinton Hall

Clinton Hall seeks to recover $465,000: $105,000 for the dilution of the common stock ultimately issued under the agreement to Clinton Hall, $250,000 for the loss of value, use, and marketability of the preferred shares, and $110,000 for the uncompensated transfer of shares to Delphina.  It is undisputed that Clinton Hall was to receive $228,600 in common shares at a floor value of $.10 per share, but the company received only $31,800, resulting in a $196,800 shortfall. In his affidavit, Clinton Hall President Leonard Gotshalk states that, because of stock dilution, the $31,800 in common stock that Stakool did issue to Clinton Hall is now worth only $42,

---

[70] *Id.* (quoting *Bergstrom v. Estate of DeVoe*, 854 P.2d 860, 861 (Nev. 1993)).

[71] ECF No. 4 at ¶¶ 105–119.

[72] *Davis v. Beling*, 278 P.3d 501, 512 (Nev. 2012).

[73] *Id.* (quoting *Collins v. Burns*, 741 P.2d 819, 822 (Nev. 1987)).

[74] *Randono v. Turk*, 466 P.2d 218, 222–23 (Nev. 1970).

resulting in an even greater loss.[75]  He also estimates that Clinton Hall's 9.9 million preferred shares have decreased at least $250,000 in value due to the unauthorized issuance of additional preferred shares.[76]

I find that Clinton Hall has sufficiently proven its entitlement to $196,800 in monetary damages based on the shortfall from the stock transfer under the purchase agreement and amendments.  I am unable to tell how Clinton Hall arrived at the $105,000 figure for the dilution of the common stock it did ultimately receive under the agreement, particularly because Clinton Hall also claims that the $31,800 in common stock it did receive is now worth $42.  I am also not inclined to award $250,000—supported solely by L. Gotshalk's affidavit—for the decrease in value of Clinton Hall's preferred shares.  Accordingly, I enter judgment for Clinton Hall and against defendants in the amount of  $196,800.

If Clinton Hall wants to re-urge its request for stock-dilution damages in a renewed motion for default judgment, it must explain—by citing to specific facts in the record or additional evidence—how it arrived at these figures and how the decrease in share values was specifically caused by defendants' contractual breaches.  Additionally, to the extent that Clinton Hall relies on non-contractual claims to support these additional damages, it must explain why they are sufficiently plead and entitle it to this relief.  Finally, I deny Clinton Hall's request for $110,000 for the uncompensated transfer of shares to Delphina because plaintiffs have not plead specific facts to hold these defendants liable for Delphina and Plessas's misrepresentations and breaches.[77]

### b. Individual plaintiffs

Kyle Gotshalk requests $320,000: $80,000 for the unissued shares under the purchase agreement, $130,000 for the shares owed under the consulting agreement, and $110,000 for the uncompensated transfer of shares to Delphina.  I find that Gotshalk has proven his entitlement to

---

[75] ECF No. 108-17 at 5.

[76] *Id.* at 6.

[77] *See supra* at A(2)(a).

contractual damages of $210,000 for the value of the unissued shares under the purchase agreement and amendments and the consulting agreement.  However, for the reasons above, I decline to award Gotshalk damages for the uncompensated transfer to Delphina.[78]  Accordingly, I enter judgment in favor of K. Gotshalk and against defendants in the amount of $210,000.

Maher requests $25,000 in monetary damages under the purchase agreement.  It is undisputed that the purchase agreement and amendments obligated defendants to pay to Maher $25,000 and that he never received it.[79]  I therefore award Maher $25,000 in contractual damages. Finally, O'Loughlin seeks $22,500 in monetary damages for the uncompensated transfer of shares to Delphina.  Because O'Loughlin is not entitled to recover from these defendants for Delphina and Plessas's breaches,[80] I decline to award him damages.

I therefore award plaintiffs combined monetary damages in the amount of $431,800.  I deny without prejudice plaintiffs' request for pre- and post-judgment interest because they did not provide me with the information I need to properly consider that request.[81]

### 2.    *Declaratory and injunctive relief*

Clinton Hall seeks an order declaring that (1) its preferred shares are valid and continue to constitute a majority vote; (2) the March 12, 2013, meeting and all actions taken at it were valid; and (3) all actions by Hellwig and the other board members removed after the meeting are invalid, unenforceable, null, and void.  It also seeks an injunction requiring defendants to rescind and cancel all improperly issued shares of common and preferred stock, refrain from issuing any more shares, and immediately turn over all corporate accounts, books, and records to the board duly appointed at the March 2013 meeting.[82]

---

[78] *See supra* at A(2)(a).

[79] ECF No. 108-19 at 3.

[80] *See supra* at A(2)(a).

[81] ECF No. 108 at 25.  Plaintiffs make no attempt to explain what this interest should be.

[82] *Id.* at 21.

1    Clinton Hall has not provided me with the necessary briefing to determine whether it is

2 entitled to this broad and far-reaching injunctive relief.  If Clinton Hall chooses to reurge this

3 request in a renewed motion, it must address the applicable standards for establishing its

4 entitlement to injunctive relief.[83]  Clinton Hall is cautioned that injunctive relief is an

5 extraordinary remedy never awarded as of right, and conclusory briefing of these issues will not

6 suffice, especially because requiring defendants to rescind issued shares and unwind other

7 corporate actions may affect the rights of third parties.  Additionally, Clinton Hall must establish

8 that monetary damages are inadequate to compensate it for its injuries, particularly in light of my

9 award of damages.

10 **C.    Request for attorney's fees**

11
12           *1.     Plaintiffs are entitled to an award of reasonable attorney's fees under NRS §
                     41.600.*

13    Plaintiffs also seek $66,485 in attorney's fees and $1,361.89 in costs for this action.[84]

14 Plaintiffs first argue that they are entitled to attorney's fees under NRS § 18.020.  A court may

15 award attorney's fees under NRS § 18.010(2)(a) to a prevailing party who has not recovered more

16 than $20,000.  Under NRS § 18.010(2)(b), a court may award attorney's fees without regard to the

17 recovery sought when it finds that a "claim. . . was brought or maintained without reasonable

18 ground or to harass the prevailing party."[85]  Because plaintiffs recovered more than $20,000 and

19 subsection (2)(b) does not apply to plaintiffs, plaintiffs are not entitled to recover fees under NRS

20 §18.020.

21    Plaintiffs next argue that they have pleaded Nevada state-law claims for securities fraud

22 and deceptive trade practices/consumer fraud for which they may recover reasonable attorney's

23 fees.  Plaintiffs have not stated a plausible state-law claim for securities fraud and are not entitled

24
_____

25
26 [83] *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (citations omitted).

27 [84] ECF No. 108 at 23.

28 [85] NEV. REV. STAT. §18.010(2)(a)–(b).

1  to attorney's fees on that basis because NRS § 90.570 does not create a private cause of action.[86]

2  Finally, plaintiffs argue that they are entitled to attorney's fees and costs for their deceptive trade

3  practices/consumer fraud claim under NRS § 41.600. That statute allows a prevailing consumer-

4  fraud claimant to recover reasonable attorney's fees and costs, so plaintiffs have identified a hook

5  for their request.

6  ### 2. Plaintiffs' requested attorney's fees are reasonable.

7  "The starting point for determining a reasonable fee is the 'lodestar' figure, which is the

8  number of hours reasonably expended multiplied by a reasonable hourly rate."[87] Plaintiffs'

9  motion and attorney affidavit combined with my personal knowledge and experience in the

10  prevailing market standards in this community allow me to determine whether the requested fees

11  are reasonable under the circumstances in this case.

12  I find that plaintiffs' counsel's hourly rates of $125–275 per hour are reasonable in light of

13  the complexity of this case and the attorneys' experience and reputation and the customary

14  litigation fees for litigating similar claims in this community. I also find that the hours expended

15  are reasonable. Plaintiffs submit an attorney declaration and 30 pages of itemized billing records

16  showing they performed 280.70 hours of work in this case.[88] That is reasonable in light of the

17  number of claims, the complexity of the claims, and Stakool's appearance and participation in

18  settlement efforts before failing to further participate in this case. I therefore grant plaintiffs'

19  request for attorney's fees and costs and enter judgment for plaintiffs and against defendants in the

20  additional amount $67,846.89.

21
22
23
24
25

[86] *McDonald v. Palacios*, 2016 WL 5346067, *15 (D. Nev. Sept. 16, 2016).

[87] *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).

[88] ECF No. 108-21.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for default judgment **[ECF No. 108] is GRANTED IN PART.  I award judgment against Hellwig, Anthus, and Stakool/Fresh Promise jointly and severally as follows:**

(1) for Clinton Hall in the amount of $196,800;

(2) for Kyle Gotshalk in the amount of  $210,000;

(3) for Richard Maher in the amount of $25,000; and

(4) for plaintiffs in the amount of $67,846.89 for attorney's fees and costs.

The motion is **DENIED** without prejudice in all other respects.  If plaintiffs wish to file a renewed motion for default judgment establishing their entitlement to any relief not granted by this order, they must do so by **April 9, 2017.**

The Clerk of Court is instructed to ENTER JUDGMENT as outlined above and close this case.

DATED: March 30, 2017.

_____
Jennifer A. Dorsey
United States District Judge

18